ISAAC PURDY *vs.* THE TOWN OF RIDGEFIELD ET AL.

Third Judicial District, New Haven, June Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The owner of a gristmill, operated by water from a neighboring pond, conveyed the mill and the tract of land on which it stood, but the deed made no reference to the pond or to the land covered by the waters of the pond. *Held* that even upon the assumption that the grantor owned the pond in fee, his grantee acquired no such title to it under the deed, but only a right to use the water for mill purposes, including therein the incidental right of flowage.

Argued June 4th—decided July 23d, 1901.

ACTION to settle and determine the rights of the respective parties in and to certain lands in the town of Ridgefield, brought to the Superior Court in Fairfield County where demurrers to the answers were overruled ( *George W. Wheeler, J.*) and the cause was afterwards tried to the court, *Roraback, J.* ; facts found and judgment rendered for the plaintiff as against the town of Ridgefield, and Hiram Kellogg and Alonzo Stevens, defaulting defendants, and in favor of the other defendants, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*James E. Walsh* and *Henry A. Purdy,* for the appellant (plaintiff).

*J. Belden Hurlbutt,* for the appellees Charles Bailey et al. (defendants).

TORRANCE, J.  The complaint alleged that the plaintiff

was the owner and possessor of three tracts of land in Ridgefield, that the defendants claimed some right or interest therein adverse to him, and prayed that the defendants should state the nature, extent and source of the estate or interest which they each claimed, and that the court should adjudicate upon and settle the title to said property. The defendants named in the complaint were six in number, namely, the town of Ridgefield, John Bailey, Charles Bailey, Hamilton Scott, Hiram J. Kellogg and Alonzo Stevens. The court has found that the town has no right or interest in the property in question, and that Stevens and Kellogg never had and never claimed to have any right or interest therein; and of this part of the finding no complaint is made by any one. The only parties to this appeal are the plaintiff, the two Baileys, and Scott.

The first piece of land described in the complaint contains about two acres, with a dwelling-house, gristmill, sawmill and cidermill thereon; the second contains about half an acre, with a gristmill thereon; while the third piece is described in the complaint as " one tract of land, being Mamanasco Pond (so-called), containing one hundred and fifty acres (150), more or less, bounded " in the manner set forth in the complaint.

The court has found without objection that the three defendants now in the case have not and never claimed to have, any right or interest in or to the first two pieces of land; and the contest between the parties in the court below, and here, related and relates solely to the rights of the parties in and to the third piece of land known as Mamanasco Pond.

The three defendants now in the case filed in the court below statements of their respective claims in and to the pond, in which statements they alleged that they owned or were in possession of land bounded on the pond, and by reason thereof, and also by virtue of an adverse user for more than fifteen years prior to the date of this suit, they had the right to fish in and use boats upon said pond.

To these statements of claim the plaintiff demurred, mainly on the ground that the facts therein alleged did not give to the defendants the alleged rights. The trial

court overruled these demurrers, and of this the plaintiff complains. Afterwards, upon finding the facts set out in these statements to be true, the court held that each of these defendants had the right to fish in, and use boats upon, said pond; and of this also the plaintiff complains.

The court below has found (1) that the plaintiff has no title to the pond or land covered by the waters thereof; (2) that the only right he has therein is the right to use the waters thereof for and at his mills on the first and second pieces of land, with the incidental right of flowage.

If this finding stands, the rulings last above mentioned, of which the plaintiff complains, did him no harm; for all he seeks or can obtain in his present suit is to have it determined whether the defendants have any rights in the pond *adverse* to him; and if his rights in the pond are only such as the court has found, then clearly the defendants' rights therein, as found by the court, are not adverse to him, and in no way violate or interfere with his rights. In other words, if the plaintiff, as he claims, owns the pond in fee, it may become necessary to pass upon the above rulings with respect to the rights of the defendants therein; but if he does not, the rulings do not in the least affect him and need not be considered.

The controlling question in the case, then, is whether the plaintiff owns the pond in fee.

In his complaint he alleges that he so owns it, and that he derived title to it by warranty deed from Darius and Jarvis Selleck, in February, 1892. That the plaintiff by that deed acquired whatever title to the pond his grantors had therein, is not questioned; so that the case turns upon the question what title to the pond did the Sellecks have when they delivered their deed to the plaintiff. The answer to this question depends mainly upon the construction of certain deeds of conveyance, set out in the record. The substance of the facts found upon this part of the case may be stated in this way: In 1708 the pond was conveyed to the proprietors of Ridgefield by a tribe of Indians who then owned it. Some short time after this a dam about ten feet in height

was built, at the outlet of the pond, and now remains there raising the water in the pond and covering about one hundred and fifty acres of land. As early as 1711 a part of the land covered by the present pond, and all of the land surrounding the same, was divided by the proprietors and became several property. In 1716 the proprietors by writing gave to Daniel Sherwood, his heirs and assigns, " full power to use ye water and flow the said pond to what height they shall see necessary, and likewise ye free & full use and liberty of fourteen rods of outlett, so long as they shall fulfill ye covenant given to the said proprietors." The " covenant " thus referred to was a deed of Sherwood to the proprietors, in which he engaged to build and maintain a good and sufficient grist-mill at the outlet of the pond, and to grind there, for the proprietors, at specified rates and at specified times. Subsequently the mill built by Sherwood, and all the rights and privileges granted to him as above, became the property of the proprietors, and in 1779 they conveyed said mill, and substantially the same rights and privileges that Sherwood had enjoyed in connection therewith, to one Chapman, on substantially the same conditions as had been imposed upon Sherwood. By sundry conveyances said mill, dam and pond privileges came, sometime prior to January 31st, 1797, to Hyatt and Burt, subject to the same conditions as were contained in the grants to Sherwood and Chapman. In January, 1797, the proprietors released to Hyatt and Burt all the right, title and interest that the releasors had in and to the pond, the dam, and the mill and the land appurtenant to it. Prior to 1858 a large number of conveyances had been made of and relating to the three tracts of land described in the complaint. In several of these conveyances, which constitute the plaintiff's chain of title, no attempt was made to convey the third tract, namely, the pond and the land covered by it. The descriptions in the last mentioned conveyances being substantially as follows : Grist and sawmills, dams, and the appurtenances belonging to said mills standing on said land. Many of said conveyances described said property substantially as follows : The gristmill standing on the outlet of

Mamanasco Pond, together with the pond, dams, privileges and utensils belonging to said mill. In none of these conveyances was the land covered by the waters of the pond described by metes and bounds. In October, 1858, John H. Wade, who then appears to have been the owner of the first and second tracts described. in the complaint in this action, mortgaged them to Nathan Scott. The mortgage deed neither conveyed nor purported to convey to Scott the pond in question. So far as the land records show Wade never made any conveyance of said mortgaged property subsequent to the date of said mortgage. In 1860 Scott foreclosed said mortgage, and he never acquired any right or interest in Mamanasco Pond other than what he acquired under said mortgage and foreclosure. Subsequently, in November, 1860, Scott by warranty deed conveyed the foreclosed premises to Ephenetus and William H. I. Howe. Said deed also purported to convey to said grantees Mamanasco Pond by metes and bounds, describing it as being in quantity one hundred and fifty acres more or less. In 1865, by warranty deed, William H. I. Howe conveyed to Hoffman certain premises described as being the same conveyed to the Howes from Scott by his deed of November, 1860. Subsequently to this Hoffman mortgaged the premises conveyed to him by Howe, to Darius and Jarvis Selleck, the plaintiff's grantors, who by foreclosure obtained title to the same. The plaintiff claims title to the three tracts of land described in the complaint, under a warranty deed to him from the Sellecks in 1892. This deed completes the plaintiff's chain of title.

The court has in effect found that none of the parties under whom plaintiff claims title acquired title to the pond by adverse possession; and so the only question is did they acquire it by deed. Now if it be conceded, for the sake of argument, that Wade in 1858, when he mortgaged to Scott, owned all the three tracts described in plaintiff's deed from the Sellecks, this will not help the plaintiff, unless it can be shown that the mortgage to Scott covered the three tracts, which as we have seen it did not. It follows from the facts found, that neither Scott, nor the Howes, nor Hoffman, nor

the Sellecks, ever acquired any title by deed to the pond, and consequently that the plaintiff got none by his deed from the Sellecks. The record thus shows that the plaintiff has no such title to the pond, as he has alleged, by deed or otherwise.

The conclusions of the court upon the facts found, respecting the title to the pond, were as follows: " The only title vested in the Sellecks when the deed of 1892 was given, in and to the pond and land in question known as tract number three, was the right to use the water from said pond for and at their mills, with the flowage right connected therewith, with the dam at its height and location at that time. These rights and easements were conveyed to the plaintiff who now owns the same. I am unable to find from the evidence, that the title to the pond and land under the same was vested in the plaintiff, the town of Ridgefield, or any of the parties to this action."

We think the facts found justified the court in coming to these conclusions, and therefore, for the reasons hereinbefore given, it will be unnecessary to consider the rulings of the court upon the various demurrers in the case, or the rulings in favor of the rights of the defendants to fish in and use boats upon said pond.

There is no error.

In this opinion the other judges concurred.